UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 25-cr-242 |
| | : | |
| | : | |
| LUTHER BULLOCK, | : | |
| | : | |
| Defendant | : | |

### EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE
### AND SEEKING *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge G. Zia Faruqi issued on August 25, 2025. The Government first requests that the Court stay Magistrate Judge Faruqi's order releasing the defendant. The Government further requests that the Court conduct a de novo review of Magistrate Judge Faruqi's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). This Court has the authority to grant a stay to consider this emergency request for de novo review from the Magistrate Judge's order of release.

Approximately two weeks ago, Luther Bullock (the "Defendant") was arrested and charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year. A Grand Jury returned an indictment charging the same count on August 22, 2025. This offense continues the Defendant's lengthy criminal history. In total, the Defendant has twenty prior arrests, eight prior convictions, and two prior bench warrants. In 2015 CF3 009974, the Defendant was convicted of Attempted Robbery in violation of 22 D.C. Code § 2802, which is punishable by up to three years of incarceration. The plea agreement filed in that case, which the Defendant signed, advised the

1

Defendant that Attempted Robbery carries up to three years of incarceration. According to the Proffer of Facts filed in that case, which the Defendant signed as part of his plea agreement, the Defendant grabbed a victim and said, "Give me your [expletive] money," hit the victim in her face with his fist, and then fled the scene. Notably, the Defendant's criminal history also includes a previous firearms case. In 2003-FEL-002293, the Defendant was convicted of Attempted Carrying a Pistol Without a License and Unlawful Possession of Ammunition, in violation of D.C. Code §§ 22-4504, 1803, and 7-2506.01. The Defendant's criminal history also includes prior violent offenses including a 2018 Simple Assault (2018 CMD 13700) and a 2014 Destruction of Property (2014-CMD-014444), which, according to the arrest warrant affidavit filed in the case, resulted from the Defendant throwing a lit cigarette into a victim's car and causing burn damage to the car's interior.

## PROCEDURAL HISTORY AND RELEVANT FACTS

On August 11, 2025, at approximately 5:40 p.m., Metropolitan Police Department ("MPD") officers responded to the area of 1st Street Northeast and Riggs Road Northeast in Washington, D.C. in response to a request from D.C. Fire & Medical Services ("DCFEMS"). W-2, a DCFEMS medic, told police that DCFEMS responded to the scene for the report of a person, later identified as the Defendant, who was injured after falling off a scooter. While EMS was providing medical assistance to the Defendant, W-1, also a DCFEMS medic, observed the outline of a firearm in the Defendant's pants. W-1 then saw the firearm fall out of the Defendant's pocket. W-1 alerted W-2, who picked up the firearm, rendered it safe, and called for police. The DCFEMS employees stored the firearm and ammunition in a fire truck until MPD officers arrived. MPD in turn called for the Department of Forensic Sciences ("DFS").

After MPD arrived, MPD Sergeant Jeremy Brady had the following conversation with the

Defendant while the Defendant was in an ambulance:

> SERGEANT BRADY:   Is your firearm registered?
>
> DEFENDANT:   No.
>
> SERGEANT BRADY:   Do you have a license to carry a firearm?
>
> DEFENDANT:   I wish I did. It's not mine. I saw it just now. I just found it.

A DFS crime scene technician responded to the scene and recovered the firearm, a .40 caliber Glock 27 with serial number BPKE131, with a 13-round-capacity magazine which contained 12 rounds.

**Figure 1: the firearm that fell out of the Defendant's pocket**

The Defendant was placed under arrest. A detention hearing was held on August 25, 2025. Following the hearing, Judge Faruqi ordered the Defendant released, over the objection of the Government. Judge Faruqi denied the Government's request to stay release pending de novo review by this Court.

## **ARGUMENT**

**I. This Court Has the Authority to Grant the Motion to Stay Release Pending De Novo Review**

The power to stay an order of release is directly related to a district court's authority to

3

review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision." (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.")).

The government is aware of Judge Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending de novo review, that the Court would not do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The government, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay in order to present the merits of the requested detention to this Court.

Thus, the government seeks a brief administrative stay of the order of release, and as such,

the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II.   *De Novo* Review of the Magistrate's Release Order

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, Title 18, U.S.C. § 3145(a) states:

  **(a) Review of a release order** – If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts

6

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

The nature and circumstances of the charged offense and the strong evidence weigh in favor of pretrial detention. The Defendant was carrying a loaded gun despite being a prohibited person with a prior firearms conviction and multiple prior violent convictions. Moreover, the evidence in this case is overwhelming. A DCFEMS medic saw the firearm fall out of the Defendant's pocket. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *See United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6,

---

the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

2023), *aff'd,* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Because that is true here, the strength of the evidence against the Defendant also favors detention.

Likewise, the Defendant's history and characteristics weigh in favor of detention. As noted, the Defendant has twenty prior arrests, eight prior convictions (including a firearms convictions and convictions for violent offenses), and two prior bench warrants. The Defendant has also completed multiple periods of probation but has not ceased his criminal conduct.

## CONCLUSION

The Defendant is eligible for pretrial detention. All four of the Bail Reform Act factors weigh in favor of pretrial detention, and the Defendant poses a risk of danger to the community and flight if he is released pending trial in this case. For these reasons, the government requests that the Defendant be detained pending trial, respectfully requests a hearing as soon as practicable, and requests that Magistrate Judge Faruqi's release order be stayed pending that hearing.

    Respectfully submitted,

    JEANINE FERRIS PIRRO
    United States Attorney

By:    /s/ *Jacob M. Green*
    JACOB M. GREEN
    MA Bar No. 706143
    Assistant United States Attorney
    601 D Street, N.W.
    Washington, D.C. 20530
    202-803-1617
    Jacob.green3@usdoj.gov